# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tyrone Williams, Jr., | Case No. 20-cv-1851 (JRT/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| S. Kallis, Warden – Federal Medical Center – Rochester, | |
| Respondent. | |

Tyrone Williams, Jr., Reg. No. 78238-083, P.O. Box 4000, Rochester, MN 55903-4000 (pro se Petitioner); and

Ana H. Voss, Ann M. Bildtsen, and Erin M. Secord, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondent).

## I. INTRODUCTION

This matter comes before the Court on pro se Petitioner Tyrone Williams, Jr.'s Petition for Habeas Corpus Relief, ECF No. 1, pursuant to 28 U.S.C. § 2241. This matter has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

1

## II. BACKGROUND

Petitioner is currently confined at the Federal Medical Center located in Rochester, Minnesota. *See, e.g.*, Decl. of Jil Slegh ¶ 7, ECF No. 7. Petitioner has a projected release date of February 20, 2024, via good conduct time release. Slegh Decl. ¶ 7; Ex. B at 1, 2 to Slegh Decl., ECF No. 7-2. Petitioner seeks the expungement of a disciplinary report from his record, "thereby removing all sanctions associated with the report." Pet. at 3.

### A. March 16, 2020 Incident

On March 16, 2020, Petitioner was written up for refusing to obey an order of a staff member. *See generally* Pet. at 2; Ex. D to Slegh Decl., ECF No. 7-4.

#### 1. Petitioner's Version

According to Petitioner, a corrections officer removed Petitioner's watch band from his wrist and began examining it. Pet'r's Exs. at 12,[1] ECF No. 1-1; *see also* Pet'r's Exs. at 6-10. Petitioner did not ask the corrections officer to remove his gloves. Pet'r's Exs. at 9, 12; *see also* Pet'r's Exs. at 6-7. Rather, Petitioner requested that the corrections officer "change [his] gloves, being that we are on a quarantine. Medical policy states that you are to change your gloves when dealing with medical inmates, and if we can[']t eat together or be around each other you shouldn't search us with the same gloves." Pet'r's Exs. at 12; *see also* Pet'r's Exs. at 6-7, 9.

The corrections officer responded that this was not the policy and directed Petitioner to show his identification. Pet'r's Exs. at 9, 12. Petitioner responded that he did not have

---

[1] As Petitioner's exhibits are not consecutively paginated, the Court refers to the page number generated by the Court's electronic filing system.

his identification with him. Pet'r's Exs. at 9, 12. The corrections officer told Petitioner: "Well you know that[']s policy." Pet'r's Exs. at 12; *see also* Pet'r's Exs. at 9. To which Petitioner responded, "I know, but I don't have it, and it's policy for you to change your gloves." Pet'r's Exs. at 12; *see also* Pet'r's Exs. at 9. The corrections officer then told Petitioner "to cuff up." Pet'r's Exs. at 9, 12. Petitioner complied, and turned around to be placed into handcuffs. Pet'r's Exs. at 12; *see also* Pet'r's Exs. at 9-10. Petitioner states he did not refuse "a pat search nor did [the corrections officer] ask." Pet'r's Exs. at 12.

### 2. Respondent's Version

According to Respondent, the corrections officer asked Petitioner "to show me his ID." Ex. D at 1; *see also* Slegh Decl. ¶ 9. Petitioner responded that "he didn't have to show . . . his ID and was not in [sic] policy." Ex. D at 1; *see also* Slegh Decl. ¶ 9. The corrections officer stated that it was in the "handbook and [Petitioner] is required to carry it with him at all times." Ex. D at 1; *see also* Slegh Decl. ¶ 9. The corrections officer next asked Petitioner "to submit to a pat search in which he asked me to remove my gloves." Ex. D at 1; *see also* Slegh Decl. ¶ 9.

The corrections officer stated "that the gloves were for [his] protection and [Petitioner's], and, while he "understood that [Petitioner] was concerned about health risks and I was taking the necessary precautions, . . . [Petitioner] was not able to refuse a direct order of a pat search from a staff member." Ex. D at 1; *see also* Slegh Decl. ¶ 9. To which Petitioner responded that "he can refuse a pat search[] at any time he wanted." Ex. D at 1; *see also* Slegh Decl. ¶ 9. The corrections officer asked Petitioner if he was "refusing a

3

direct order of a pat search," and Petitioner said, "Yes."  Ex. D at 1; *see also* Slegh Decl. ¶ 9.  Petitioner was then placed in restraints.  Ex. D at 1; *see also* Slegh Decl. ¶ 9.

### B. Disciplinary Proceedings

Petitioner was subsequently subject to disciplinary proceedings, including a hearing before the unit discipline committee.  Slegh Decl. ¶¶ 10-12; *see generally* Ex. D.  Petitioner maintained the corrections officer asked him about his watchband and then for his identification, which Petitioner did not have.  Ex. D at 1-2.  Petitioner also maintained that the corrections officer did not ask to perform a pat search and no such request was refused.  Ex. D at 1-2.

On March 19, Petitioner was found guilty of refusing to obey the order of a staff member—namely, to comply with a pat search—and sanctioned to 14 days' loss of phone privileges.  Ex. D at 1; Ex. C at 1 to Slegh Decl., ECF No. 7-3; *see also* Slegh Decl. ¶ 12.

### C. Administrative Appeals

Petitioner appealed the sanction through the Federal Bureau of Prisons' ("BOP") administrative-remedy process.  *See generally* Ex. A to Slegh Decl. (inmate discipline program).  *See also* 28 C.F.R. § 542.10 *et seq.*  Petitioner filed an administrative remedy request on March 23, challenging the decision and requesting that the corrections officer be "retrained and demoted."  Pet'r's Exs. at 12-13; *see also* Pet. at 2.  *See* 28 C.F.R. § 524.14(a) (formal written administrative remedy request due within 20 days).

On April 3, Respondent responded to Petitioner's request.[2] Pet'r's Exs. at 14; *see also* Pet. at 2. Respondent denied Petitioner's appeal. Pet'r's Exs. at 14. Respondent also denied Petitioner's request to discipline the corrections officer involved, noting that the matter would "be thoroughly reviewed and if it is determined staff acted inappropriately, this issue will be forwarded to the proper investigative authority." Pet'r's Exs. at 14. Respondent additionally noted that Petitioner would "not receive information regarding the outcome of any staff investigation." Pet'r's Exs. at 14. Petitioner was also informed that if he was "dissatisfied with this response," he could "file an appeal with the North Central Regional Director." Pet'r's Exs. at 14. *See* 28 C.F.R. § 542.15(a) (inmate unsatisfied with warden's response may appeal to appropriate regional director within 20 days).

Upon receipt of Respondent's response, Petitioner "realized the remedy [he] request[ed] was not . . . [his] desired intention." Pet. at 2. Petitioner submitted a second administrative remedy request on April 6.[3] Pet. at 2; *see generally* Pet'r's Exs. at 9. In his second administrative remedy request, Petitioner requested that "[t]he incident report . . . and resulting sanctions be expunged from [his] personal file/record." Pet'r's Exs. at 9. This second administrative remedy request was rejected on April 9 as being "repetitive of [a] previous filing." Pet'r's Exs. at 11; *see also* Pet. at 2. Petitioner did not receive the rejection until April 30. Pet'r's Exs. at 11; *see also* Pet. at 2-3.

---

[2] Petitioner states that he received the response on April 6, 2020. Pet. at 2.
[3] This second request is dated April 6, 2020. *See generally* Pet'r's Exs. at 9-10. It is not entirely clear, however, whether the request was submitted on April 6 or April 7. *See* Pet. at 2 ("Received and filed BP-9 on the 'same incident,' but sought different remedy on 4/6/20. Petitioner turned the BP-9 form in to Councelor [sic] Woltman on 4/7/20.").

5

On May 6, Petitioner appealed the rejection of his second administrative remedy request to the regional director. Pet. at 3; *see generally* Pet'r's Exs. at 15. *See also* 28 C.F.R. § 542.15(a). This request was rejected by the Central Office. *See generally* Pet'r's Exs. at 1. The Central Office "concur[red] with [the] rationale of [the] regional office and/or institution for rejection." Pet'r's Exs. at 1. The Central Office listed the identification number of Petitioner's first administrative remedy request on the rejection notice, rather than the identification number for the second administrative remedy request. Pet'r's Exs. at 1; Pet. at 3.

### III. ANALYSIS

Petitioner claims his right to due process was violated by the rejection of the second administrative remedy request and the disciplinary sanction imposed caused him to "suffer[] a loss of a liberty interest" because, according to BOP policy, he was disqualified from seeking transfer to another BOP institution for purposes of enrolling in certain BOP programs which could reduce his sentence for at least 12 months. Pet. at 1; *see generally* Pet.; Pet'r's Rebuttal, ECF No. 9. Respondent argues that the Petition should be dismissed for lack of jurisdiction because Petitioner is not challenging the fact or duration of his confinement.

A writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also Muhammad v.*

6

*Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ." (citing *Preiser*, 411 U.S. at 500)). "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as a loss of good time, then a writ of habeas corpus is not the proper remedy." *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (citing *Preiser*, 411 U.S. at 499); *accord Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014). "It is the substance of the relief sought which counts." *Kruger*, 77 F.3d at 1073.

As best as this Court is able to tell, the substance of the relief sought by Petitioner is the expungement of this disciplinary action.[4] *See id.* But the loss of 14 days' telephone privileges does not affect the length of Petitioner's confinement, such as, for example, a loss of good time credits.[5] *See, e.g.*, *Terrell v. Fox*, Civil Action No. 17-cv-02569-WJM-MEH, 2018 WL 2220281, at *2-3 (D. Colo. May 15, 2015) (loss of visitation days did not affect length of sentence), *report and recommendation adopted*, 2018 WL 6831111 (D. Colo. Dec. 28, 2018); *Abramov v. Shartle*, Civ. No. 14-6448 (NLH), 2015 WL 3407242, at *2 (D. N.J. May 22, 2015) (disciplinary sanctions of 90 days' loss of commissary, 90 days' loss of inmate e-mail, and loss of preferred cell assignment did not affect length of

---

[4] Petitioner also contends that he was denied due process in the disciplinary proceedings because his administrative appeal was rejected as being "untimely." Pet. at 2. The exhibits attached to the Petition by Petitioner himself, however, show that his administrative remedy requests were *not* decided on grounds of untimeliness. *See, e.g.*, Pet'r's Exs. at 1 (concurring with prior rejection), 11 (rejecting request as repetitive of previous filing), 14 (denying on merits). More fundamentally, "the requirements of procedural due process apply only when there has been a deprivation of life, liberty, or property within the meaning of the Fifth or Fourteenth Amendment." *Schneider v. United States*, 27 F.3d 1327, 1332 (8th Cir. 1994). As explained more fully herein, there was no deprivation of a legally cognizable liberty interest.

[5] Indeed, the unit discipline committee that held the hearing and imposed the loss of phone privileges is not permitted to sanction an inmate with "loss of good conduct sentence credit, disciplinary segregation, or monetary fines." 28 C.F.R. § 541.7(f); *see also* Ex. A at 24 to Slegh, Decl., ECF No. 7-1.

confinement or execution of sentence); *Freeman v. Norwood*, Civil No. 1:15-CV-666, 2015 WL 2384109, at *2-3 (M.D. Penn. May 19, 2015) (loss of 21 days visiting privileges had no impact on fact or length of confinement); *Franklin v. Sanders*, No. CV 11-3658 DDP (MRW), 2011 WL 7971747, at *2 (C.D. Cal. June 28, 2011) (30 days' loss of shopping privileges at commissary did not affect length of sentence or change release date), *report and recommendation adopted*, 2012 WL 1944819 (C.D. Cal. May 29, 2012); *cf. Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (loss of good time credit as disciplinary sanction implicated liberty interest protected by Due Process Clause) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). At least two circuit courts of appeal have held that this sort of claim is not a valid basis for habeas relief. *See, e.g.*, *Lawrence v. Oliver*, 602 F. App'x 684, 687 (10th Cir. 2015); *Parks v. Jordan*, 573 F. App'x 233, 234-36 (3d Cir. 2014).

Petitioner nevertheless argues that the disciplinary action *does* in fact affect the length of his confinement because it has delayed his eligibility to participate in programs, such as the Life Connections Program[6] and the Residential Drug Abuse Program ("RDAP"), which he contends would allow him to earn additional good time credit. Petitioner also argues that the disciplinary action affected his "Pattern score," which "eliminat[ed] any possibility he may have had for early home confinement." Pet'r's

---

[6] The Life Connections Program "is a multi-faith residential reentry program" that "offer[s] inmates the opportunity to improve critical life areas within the context of their personal faith or value system." *Religious Programs*, Fed. Bureau of Prisons, U.S. Dep't of Justice, https://www.bop.gov/inmates/custody_and_care/religious_programs.jsp (last accessed May 13, 2021). Inmates must apply to participate in the program, be recommended by their institution's chaplain, and be approved by their institution's warden. *Programs*, U.S. Dep't of Justice, https://www.justice.gov/archive/fbci/progmenu_programs.html (last accessed May 13, 2021) (archived). "Participants have no extra incentives to participate - - other than a personal desire to change and grow" and "[t]he [Life Connections Program] facilities are no different from any other cellblock in the facility." *Id.*

8

Rebuttal at 1. Liberally construed, Petitioner's arguments can be read as asserting that the disciplinary action affected a liberty interest protected by the Due Process Clause.

Any delayed, reduced, or even eliminated eligibility for participation in these prison programs does not implicate a legally cognizable liberty interest. "It is well established that a convicted person has no general constitutional right to be released before the expiration of his prison term." *Correll v. United States*, No. CIV 14-4158, 2015 WL 1478024, at *4 (D. S.D. Mar. 31, 2015) (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)), *aff'd*, 626 F. App'x 662 (8th Cir. 2015) (per curiam). "Inmates likewise have no constitutional entitlement to participate in federal rehabilitative programs." *Id.* (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)). "It is just as well established that even inmates who are unquestionably qualified to and do participate in RDAP do not have a constitutional right to the early release benefit." *Id.* (citing *Lopez v. Davis*, 531 U.S. 230, 241 (2001); *Gianni v. Fed. Bureau of Prisons*, 405 F. App'x. 96, 97 (8th Cir. 2010)); *see* 18 U.S.C. § 3621(e)(2)(B) (period of custody "may be reduced" upon successful completion of treatment program); *see also Lipczynski v. Marques*, No. 18-cv-1466 (JNE/BRT), 2018 WL 4956717, at *5 (D. Minn. Sept. 6, 2018) (discretion conferred on BOP under RDAP statute for early release "preclude[d] the creation of a liberty interest in early release and foreclose[d] any due process challenge"), *report and recommendation adopted*, 2018 WL 4955236 (D. Minn. Oct. 12, 2018). Lastly, "[i]t is . . . well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement," which includes home confinement. *United States v. James*, No. 15-cr-

255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020) (citing cases); *see* 18 U.S.C. §§ 3621(b), 3624(c).

Moreover, even if Petitioner's disciplinary action were to be expunged, this "does not mean immediate release from confinement or a shorter stay in prison." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). At most, Petitioner may be eligible for certain programs, which could potentially affect his projected release date. *See id.* ("Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term."); *Parks*, 573 F. App'x at 236 ("[E]ven if Parks is successful at expunging the disciplinary infraction at issue, parole is not a certainty; there are other factors which could affect his chances for parole, including other disciplinary infractions." (footnote omitted)). This sort of claim, which does not itself "necessarily spell speedier release," lies outside "the core of habeas corpus." *Wilkinson*, 544 U.S. at 82 (quotation omitted); *see Parks*, 573 F. App'x at 235 ("The fact that the disciplinary infraction *may* affect Parks' chances at parole is insufficient to bring his due process claims within the ambit of habeas."); *see also Muhammad*, 540 U.S. at 754-55.

Because Petitioner's claim is not cognizable in habeas petition under § 2241, the Court recommends that the Petition be dismissed without prejudice for lack of subject

10

matter jurisdiction.[7] *See, e.g.*, *Petersen v. Clarke*, 82 F.3d 421, at *1 (8th Cir. 1996) (per curiam); *Smith v. Warden of Duluth Prison Camp*, No. 18-cv-2555 (WMW/LIB), 2019 WL 3323063, at *1 (D. Minn. July 24, 2019); *see also Parks*, 573 F. App'x at 236.

## IV. RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Habeas Corpus Relief, ECF No. 1, be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Date: May   13   , 2021                     *s/ Tony N. Leung*
                                            Tony N. Leung
                                            United States Magistrate Judge
                                            District of Minnesota

                                            *Williams v. Kallis*
                                            Case No. 20-cv-1851 (JRT/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

[7] Petitioner also requests appointment of counsel. Pet. at 3; *accord* Pet'r's Rebuttal at 2. There is no right to counsel in a non-capital, habeas action. *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994); *see* 18 U.S.C. § 3006A(a)(2)(B). "A district court may appoint counsel for a habeas petitioner if it 'determines that the interests of justice so require.'" *Wiseman v. Wachendorf*, 984 F.3d 649, 655 (8th Cir. 2021) (quoting 18 U.S.C. § 3006A(a)(2)(B)). Petitioner's filings demonstrate his ability to articulate his position to the Court, including citation to legal authority, and the Court has concluded that it lacks subject matter jurisdiction over the Petition. The interests of justice do not warrant appointment of counsel under the circumstances. *See id.* (listing relevant factors); *see also Martin v. Fayram*, 849 F.3d 691, 699 (8th Cir. 2017).